294 So.2d 284 (1974)
John B. PERTUIS, Jr.
v.
ISLANDER MOTORHOMES, INC., et al.
No. 9741.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
Rehearing Denied May 30, 1974.
Writ Refused July 1, 1974.
*285 William Luther Wilson, Baton Rouge, for Islander Motorhomes.
Robert L. Kleinpeter, Baton Rouge, for Quality Mobile Homes, Inc.
L. Todd Gremillion and Brian Williams, Baton Rouge, for John B. Pertuis, Jr.
Before LANDRY, ELLIS and PICKETT, JJ.
ELLIS, Judge.
Plaintiff John B. Pertuis, Jr. purchased a 1969 Islander Motorhome from Quality Mobile Homes, Inc. on December 17, 1969. Because of excessive water leakage, which Quality was unable to repair, Mr. Pertuis returned the unit to Quality on July 20, 1970, and, on August 17, 1970, filed this suit, demanding the return of the purchase price, $13,500.00, plus expenses of the sale and other damages allegedly due. Defendants are Quality and Islander Motorhomes, Inc., the manufacturer of the vehicle. On June 5, 1973, shortly before the trial, Quality filed a third party demand against Islander, seeking judgment for any amount it might be condemned to pay. Islander denied liability under the third party demand, and, in turn, third partied Quality, demanding indemnification of any loss resulting from deterioration of the vehicle between the date of the tender and the date of the judgment to be rendered.
After trial on the merits, judgment was rendered in favor of plaintiff and against both defendants, in solido, for $14,550.00, with the liability of Quality being restricted to $14,250.00, and rescinding the sale to plaintiff. Judgment was rendered in favor of Quality of its third party demand against Islander for $14,250.00, and Islander's third party demand was dismissed. From that judgment, both Quality and Islander have appealed. Quality assigns no error, and denominates its appeal as protective in nature.
Islander urges as error the award of the full amount of the judgment to Quality on its third party demand without considering the value of the motorhome, which, it is contended, became the property of Quality as of the time of its tender; and in not using the value of the motorhome as of *286 the time of the tender to establish the extent of the damages suffered by Quality.
Islander maintains that, because rescission of the sale from it to Quality was not demanded, and, because the vehicle was not tendered to it by Quality, it was not able to minimize its damages by performing maintenance and repairs on the vehicle, and therefore should not be responsible for the deterioration which it contends was caused by Quality's neglect.
When the motorhome was returned to Quality, it was parked in Quality's parking lot, where it remained until the trial. No maintenance was performed on it during that time. There is testimony that, under those circumstances, a vehicle will deteriorate both in value and condition more rapidly than one which is regularly maintained or regularly used.
We find no codal authority fixing responsibility for preservation pendente lite of a thing subject to a redhibitory vice, other than by implication from Article 2531 of the Civil Code, which permits recovery by the buyer of expenses incurred for the preservation of the thing. In this case, however, the plaintiff buyer returned the thing to the seller, which accepted it, and, we think, thereby assumed any obligation to preserve.
Further, as to the extent of the obligation to preserve, we are without guidelines in the redhibition articles. However, we believe that the possessor pendente lite of a thing allegedly subject to a redhibitory defect is in a position analogous to that of a depositary, and subject to the responsibilities provided by Articles 2926 et seq. of the Civil Code.
The appropriate Articles read as follows:
"Art. 2926. A deposit, in general, is an act by which a person receives the property of another, binding himself to preserve it and return it in kind."
"Art. 2929. The deposit is essentially gratuitous. If the person, with whom the deposit is made receive a compensation, it is no longer a deposit, but a hiring."
"Art. 2932. The voluntary deposit takes place by the mutual consent of the person making the deposit and the person receiving it."
"Art. 2937. The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
"Art. 2938. The provision in the preceding article is to be rigorously enforced:
"1. Where the deposit has been made by the request of the depositary.
"2. If it has been agreed that he shall have a reward for preserving the deposit.
"3. If the deposit was made solely for his advantage.
"4. If it has been expressly agreed that the depositary should be answerable for all neglects."
"Art. 2939. The depositary is not answerable, in any case, for accidents produced by overpowering force, unless he has delayed improperly to restore the deposit."
"Art. 2940. The depositary can not make use of the thing deposited, without the express or implied permission of the depositor."
"Art. 2945. The depositary is only bound to restore the thing in the state in which it is at the moment of restitution. Deteriorations, not effected by any act of his, are to be the loss of the depositor."
These articles would seem to impose an obligation of due care on a depositary, with the burden somewhat higher on a compensated depositary than on a gratuitous *287 depositary. In attempting to apply the foregoing principles to the instant case, however, we find ourselves to be confronted with considerations which would not have been anticipated by the authors of our Civil Code.
These considerations include the complexity and delicacy of many of the mechanical devices on the market today; the increasing frequency with which such devices, when new, are subject to defects; the difficulty of repair; the problems and expense involved in maintenance and preservation; the automatic depreciation in value of such devices because of age, regardless of quality; and the sharp reduction in value which results from the existence of a redhibitory defect.
It is not unlikely that the burden of maintenance of such a device, using due care, over an extended period of time would be far out of proportion to the ultimate benefit to be derived therefrom, when compared with the expected depreciation, the present condition, the defects alleged to exist, and the utility of the thing. In such a case, a prudent administrator might well find it not worthwhile to engage in extensive maintenance and upkeep.
This case, for instance, arose out of a 1969 sale and has been in court since 1970. The redhibitory defects present were numerous leaks in the body, which rendered the motorhome unfit for use by the plaintiff. Quality, despite a number of attempts, was unable to repair the leaks. It is beyond question that these defects resulted from the manufacture, and not from any fault of either plaintiff or Quality.
The evidence indicates that the motorhome, even without the redhibitory defects, would have depreciated over 60% in value by the present time. With the presence of redhibitory defects, it is safe to assume that an even greater decrease in value could be anticipated. The defects were not repairable by Quality, despite a number of attempts. The nature of the defects were such as to require garaging, if excessive deterioration from water leakage was to be prevented.
Even though Quality was in a better position than most to perform routine maintenance, we cannot find that it acted imprudently or unreasonably in failing to do so, considering the expense to be incurred, the time involved, the condition of the motorhome, and the benefit to be derived from such maintenance.
In answer to Islander's contention that it was unable to minimize its damages, we point out that any party to this suit could have requested a conventional or judicial sequestration of the vehicle, under Articles 2972 et seq., of the Civil Code. The guardian appointed under those articles must "use, for the preservation of the effects seized, the care of a prudent father of a family." It would appear that, although Islander is not required by law to maintain the thing, pendente lite, it has the opportunity of causing it to be done, with the cost to be borne by the party eventually case in judgment.
On the other hand, since the motorhome became the property of Quality when the sale was rescinded, Islander is entitled to credit in the judgment for the value thereof. The only evidence in the record as to the value of the motorhome is that of Mr. Harrell, president of Quality, who testified on cross examination that the motorhome was worth in the vicinity of $4,000.00 at the time of trial. However, his testimony is not as an expert, and his estimate of valuation was given as a "ball park" figure. We cannot accept the allegation made in brief as to the eventual sale price of the vehicle, since it forms no part of the record before us. The case must therefore be remanded for evidence of the value of the motorhome as of the time of trial so that a credit for that amount can be given Islander in the judgment against it.
The judgment appealed from is therefore amended so as to reduce the judgment *288 against Islander on Quality's third party demand by the value of the motorhome as of the time of trial, it is ordered that the case be remanded to the trial court to take evidence on the question of the value of the said motorhome, and for the rendition of judgment in accordance with this opinion. In all other respects, the judgment is affirmed. All costs of the case are to be paid by Islander.
Affirmed in part, amended in part and remanded.